IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HUI-HSIANG HSU, | ) | CV. NO. 10-00470 DAE/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII | ) | |
| DEPARTMENT OF | ) | |
| TRANSPORTATION; and DOE | ) | |
| INDIVIDUALS 1-20; DOE | ) | |
| ENTITIES 1-20; DOE | ) | |
| CORPORATIONS 1-20; DOE | ) | |
| PARTNERSHIPS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

On October 14, 2011, the Court heard Defendant State of Hawaii Department of Transportation's ("Defendant") Motion for Summary Judgment ("Motion").  Venetia K. Carpenter-Asui, Esq., appeared at the hearing on behalf of Plaintiff Hui-Hsiang Hsu ("Plaintiff"); Nelson Y Nabeta, Esq., and James Earl Halvorson, Esq., appeared on behalf of Defendant.  After reviewing the Motion and the supporting and opposing memoranda, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. # 27).

<u>BACKGROUND</u>

I.   <u>Factual Background</u>

The instant action stems from allegations that Defendant unlawfully retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff is currently employed by Defendant and has been since 2008. ("Compl.," Doc. # 1, ¶ 9–10.)  Plaintiff works in Defendant's Fiscal Accounting Office.  Plaintiff claims that in late February 2008, she was descending a stairway at Defendant's main office while a male employee, Charles Cruz ("Cruz") was ascending the same stairway.  (<u>Id.</u> ¶ 11.)  Plaintiff and Cruz engaged in "small talk" conversation at which point Cruz "rested his hand on her left upper thigh and buttocks area."  (<u>Id.</u>)  Plaintiff thereafter exited the stairwell.  (<u>Id.</u>)

Plaintiff claims she reported the matter to Chief Fiscal Officer for the Highways Division Fiscal Office Wai Li ("Li"), her supervisor, who in turn took her to see Highways Division Personnel Officer Thomas Jackson ("Jackson").  (<u>Id.</u> ¶ 12.)  Jackson consulted with Office of Civil Rights Manager Rey Domingo ("Domingo").  (<u>Id.</u>)  Domingo and Jackson agreed that Equal Employment Opportunity/Affirmative Action Officer Elizabeth-Ann Motoyama ("Motoyama") would investigate the matter.  (<u>Id.</u>)

2

Motoyama's investigation resulted in a mutually agreeable settlement between Plaintiff and Cruz.  (Id. ¶ 13.)  Importantly, as a part of the settlement agreement, Cruz "agreed to stay out of Plaintiff's work area, to not communicate with her, to not look at her, to not acknowledge her presence, and to avoid being in close proximity with her."  (Id.)

In April 2008, Plaintiff claims that "Cruz returned to Plaintiff's work area in Fiscal Accounting."  (Id.)  Plaintiff complains that "Cruz positioned himself in close proximity to the Plaintiff which required Plaintiff to walk through a swinging door at an angle to avoid brushing up against Cruz."  (Id.)  Motoyama spoke with Gerald Dang ("Dang"), Cruz's supervisor, about this development, but he allegedly refused to stop Cruz from entering Plaintiff's work area.  Motoyama thereafter advised Cruz and Dang that Cruz's return to Plaintiff's work area might be construed as retaliation.  (Id.)

In July 2008, Plaintiff filed a retaliation complaint with Motoyama in Defendant's Office of Civil Rights Management.  (Id.)  Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 28, 2008 regarding Cruz's harassment and the subsequent alleged retaliation.  (Id.)  Plaintiff finally sent an email to Director Morioka ("Morioka") requesting he protect her from retaliation on August 5, 2008.  (Id. ¶ 15.)

3

After further attempts to resolve the conflict, Dang met with Li, as well as Plaintiff's other two supervisors, Jerry Sikorski ("Sikorski") and Tommy Leong ("Leong").  (Id. ¶ 20.)  At this meeting, Plaintiff claims that Dang asked Plaintiff's three supervisors to fire her.  (Id.)  Plaintiff goes on to allege that "[w]hen they refused, Dang, in further retaliation . . . launched an investigation of Plaintiff based on information that Dang acquired from [Defendant's] employees."  (Id.)  Specifically, Defendant investigated Plaintiff's prior felony conviction for theft.  ("DCSF," Doc. # 28, Ex. N.)

Plaintiff next claims that in November 2008, Dang hired Cathy Hiranaka ("Hiranaka"), an individual who held Plaintiff's position prior to Plaintiff being hired.  (Id. ¶ 22.)  Plaintiff claims that Hiranaka harassed Plaintiff with numerous emails and "[a]cted in the place of supervisor rather than co-worker."  (Id.)  Plaintiff filed a second retaliation complaint with the EEOC on January 23, 2010.[1]  (Id. ¶ 25.)

II.   Procedural Background

On August 16, 2010, Plaintiff filed her Complaint with this Court.  (Doc. # 1.)  Plaintiff initially alleged causes of action for: (1) hostile work

---

[1] Although not mentioned in the briefing by either party, at the Hearing the Court asked whether the EEOC took any action with respect to Plaintiff's EEOC complaints.  Plaintiff represented that the EEOC took no action.

environment and retaliation in violation both of Title VII as well as Hawaii State Law (Compl. ¶¶ 42–44); (2) Violations of Hawaii Whistleblowers' Protection Act (id. ¶¶ 45–47); and (3) Intentional Infliction of Emotional Distress (id. ¶¶ 48–53). Since then, however, the parties have stipulated to dismiss Plaintiff's hostile work environment and state law claims.  (See Doc. # 51.)  Accordingly, all that remains are Plaintiff's Title VII retaliation claims.

On June 15, 2011, Defendant filed its Motion for Summary Judgment. ("Mot.," Doc. # 27.)  On September 23, 2011, Plaintiff filed her Opposition. ("Opp'n," Doc. # 46.)  On September 30, 2011, Defendant filed its Reply. ("Reply," Doc. # 49.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence' " must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson

v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge.") (citations omitted).  However, inferences

may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required  to resolve in favor of the nonmoving party.  T.W. Elec.

Serv., 809 F.2d at 631.

DISCUSSION

I.    Retaliation

Title VII's "opposition" clause makes it "'unlawful . . . for an

employer to discriminate against any . . . employee[] . . . because he has opposed

any practice made . . . unlawful . . . by this subchapter.'"  Crawford v. Metro.

Gov't of Nashville & Davidson Cnty, 129 S. Ct. 846, 850 (2009) (quoting 42

U.S.C. § 2000e-3(a)) (modification in original).  "When an employee

communicates to her employer a belief that the employer has engaged in a form of

employment discrimination, that communication virtually always constitutes the

employee's opposition to the activity."  Id. at 851.

"'In order to establish a prima facie case of retaliation [a plaintiff]

must demonstrate that (1) she had engaged in a protected activity'; (2) the

[employer] subjected her 'to an adverse employment action; and (3) a causal link

8

existed between the protected activity and the adverse employment action.'" Nilsson v. City of Mesa, 503 F.3d 947, 953–54 (9th Cir. 2007) (quoting Porter v. Cal. Dep't of Corrs., 419 F.3d 885, 894 (9th Cir. 2005); see also Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002) (same). "If [a plaintiff] is able to assert a prima facie retaliation claim, the 'burden shifting' scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies." Steggal v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002); see also Nilsson, 503 F.3d at 954.

Per McDonnell Douglas, if a plaintiff establishes a prima facie case of retaliation, "the burden shifts" to the employer "to articulate a legitimate, non-retaliatory reason for its actions." Nilsson, 503 F.3d at 954; see also Steggal, 350 F.3d at 1066 (citing Manatt v. Bank of Am., N.A., 339 F.3d 792, 800 (9th Cir. 2003). If the employer establishes such a reason, the plaintiff "bears the ultimate burden of submitting evidence that the [employer's] proffered reason is merely a pretext for a retaliatory motive." Nilsson, 503 F.3d at 954 (citing Porter, 419 F.3d at 894).

II.   <u>Plaintiff's Claims</u>

Plaintiff claims she engaged in the following six protected activities:

• Reporting Cruz's alleged inappropriate physical contact to Li in March 2008.  (Opp'n at 16.)

• Reporting Cruz's alleged inappropriate physical contact to the Defendant's Office of Civil Rights, specifically to Domingo and Motoyama, who conducted an investigation in March 2008. (<u>Id.</u> at 16–17.)

• Reporting Cruz's alleged entry into Plaintiff's work area and Dang's refusal to prevent him from doing so to Defendant's Office of Civil rights, specifically to Motoyama in July 2008. (<u>Id.</u> at 17.)

• Filing an EEOC Complaint regarding Cruz's alleged entry into Plaintiff's work area and Dang's refusal to prevent him from doing so in July 2008.  (<u>Id.</u>)

• Writing an email to Morioka asking for protection from retaliation in August 2008.  (<u>Id.</u>)

• Filing a second EEOC Complaint relating to Defendant's investigation into Plaintiff's felony theft conviction.  (<u>Id.</u>)

10

Plaintiff's six claimed protected activities therefore stemmed from three underlying incidents: (1) Cruz's alleged inappropriate physical contact with Plaintiff; (2) Cruz's alleged entry into Plaintiff's work area and Dang's alleged refusal to prevent him from doing so; and (3) Defendant's investigation into the felony theft conviction. (See id. at 16–27.)

Plaintiff further argues she suffered three adverse actions. First, "Cruz was allowed to reenter Plaintiff's work area in retaliation" for reporting Cruz. (Id. at 19.) Second, Dang instructed Li, Sikorski, and Leong to fire Plaintiff. (Id.) Finally, Plaintiff claims that Dang's decision to hire Hiranaka, who subsequently harassed Plaintiff with numerous emails as her supervisor, was also adverse. (Id. at 19–20.)

Plaintiff claims that each adverse action was taken in response to protected activity. (Id. at 20–21.)

A.    Cruz's entry into Plaintiff's work area

i.    Protected Activities

As a preliminary matter, Defendant contends that the first two of Plaintiff's claimed "protected activities" are not, in fact, protected as contemplated by Title VII. Specifically, Defendant argues that because Plaintiff was reporting the conduct of a male co-employee rather than any adverse employment action,

11

Plaintiff did not engage in a protected activity. As a result, according to

Defendant, Cruz's entry into Plaintiff's work area can not be deemed "retaliatory"

as a matter of law because Plaintiff did not engage in a protected activity.

"[T]o constitute protected activity under the 'opposition clause,' a

[p]laintiff's 'opposition must be directed at an unlawful employment practice of an

employer, not an act of discrimination by a private individual.'" Funai v.

Brownlee, 369 F. Supp. 2d 1222 (D. Haw. 2004) (quoting Silver v. KCA, Inc., 586

F.2d 138, 141 (9th Cir. 1978)). Indeed, the "opposed conduct must fairly fall

within the protection of Title VII to sustain a claim of unlawful retaliation.

Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988). To be certain,

however, a co-employee may be considered an agent of the employer for

opposition purposes. See EEOC. v. Crown Zellerbach Corp, 720 F.2d 1008,

1013–14 (9th Cir. 1983); Trent v. Valley Elec. Ass'n, Inc., 41 F.3d 524, 526 (9th

Cir. 1994). A plaintiff need only have a "reasonable belief" that the employment

practice was prohibited by Title VII to establish that she engaged in protected

activity. EEOC, 720 at 1015 n.4; Trent, 41 F.3d at 526.

Here Plaintiff's first two claimed protected activities stem from the

underlying illicit physical contact between Plaintiff and Cruz. (Opp'n at 16–17.)

Plaintiff's evidence bears out that Cruz "did not deny that he may have

accidentally touched" the Plaintiff because he lacked complete control over his left arm as a result of recent surgery. ("P's Decl.," Doc. # 47-1, ¶ 7.) Cruz's decision to touch Plaintiff cannot be imputed to Defendant, his conduct had nothing to do with his employment, nor did it relate to the performance of his duties. His actions could not, therefore, have been an act of the employer such that Plaintiff's decision to report the conduct constituted a "protected activity." Because Cruz's allege physical contact did not "fall within the protection of Title VII," Plaintiff's complaints about Cruz's entry into Plaintiff's work area cannot form the basis for a retaliation claim. <u>Learned</u>, 860 F.2d 932; <u>see also</u> <u>Funai</u>, 369 F. Supp. 2d at 1243 ("Opposition to a discriminatory act of a co-employee cannot be the basis of a retaliation action. Only reasonable opposition to the employment practice is protected by Title VII."). Plaintiff's retaliation claim, therefore, that "Cruz was allowed to reenter Plaintiff's work area in retaliation" for reporting Cruz must fail as a matter of law.

      ii.   <u>Adverse Action</u>

      Even assuming, however, that reporting Cruz's illicit physical contact was a "protected activity" such that it could form the basis of a retaliation claim, Plaintiff has failed to demonstrate that Cruz's continued reentry into Plaintiff's

work area qualified as an "adverse action."  Accordingly, Plaintiff has failed to establish a prima facie case of retaliation on these grounds.

The Supreme Court has held that the "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  A plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id.  An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment."  Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1126 (9th Cir. 2000).

Importantly "material adversity" is distinct from "trivial harms." Burlington, 548 U.S. at 68.  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id. Instead, "[t]he antiretaliation provision seeks to prevent employer interference with ''unfettered access' to Title VII's remedial mechanisms."  Id.

Plaintiff's own exhibits make clear that Cruz's entry into her work area did not rise to the level of "material adversity."  Li recalled seeing Cruz only

14

twice entering Plaintiff's work area after the alleged physical contact. ("PCSF," Doc. # 47, Ex. Q, at 22.) Moreover, Cruz only passed by her area because it was located near the entrance to the Fiscal Accounting Office. (Id.) Similarly Sikorski recalled seeing Cruz enter the work area only once after the alleged physical contact. (PCSF, Ex. R, at 12–13.) Plaintiff, on the other hand, recalled Cruz entering the Fiscal Accounting Office three or four times a week to speak to one of three employees located in that office. (PCSF, Ex. H, at 114–15.) It is not disputed, however, that when Cruz entered the office he did not stop at the Plaintiff's cubicle, he did not approach Plaintiff, he did not speak to Plaintiff or attempt to make physical contact with her. (Id.) He simply walked past her, as he had to, in order to enter the Fiscal Accounting Office. Plaintiff claimed that she believed Cruz was "'flexing muscle,' creating false business-related reasons for being in his office, and showing that he can walk wherever he wants to walk and stand in close proximity to her with impunity." (PCSF, Ex. D, at 2.)

These facts establish that Cruz's decision to enter the Fiscal Accounting Office did not qualify as adverse employment actions. First, the conduct of which Plaintiff complains was not an act of the employer. As Plaintiff herself admitted, Cruz's motivation for entering her work place was to "flex his muscles" and demonstrate that he could enter her office, regardless of her reporting

15

him to her superiors.  (Id.)   Cruz's unilateral decision to enter Plaintiff's work area

can hardly be attributed to Defendant.[2]   Moreover, the record bears out that Ms.

Hsu sent an email to Highways Administrator Glenn Yasui requesting his

assistance with Cruz's alleged repeated entries into Plaintiff's work area.  (DSCF,

Ex. H, at 136, 289.)  After the email had been sent, Plaintiff admits that Cruz did

not reenter the Fiscal Accounting Office.  (Id. at 290–92.)  Plaintiff believes this is

because Dang directed Cruz not to enter her workplace.[3]  (Id. at 291.)  As the

Supreme Court explained, "[t]he antiretaliation provision seeks to prevent

employer interference with 'unfettered access' to Title VII's remedial

mechanisms."  Burlington, 548 U.S. at 68 (emphasis added).  Here, the evidence

makes clear that the employer in no way interfered with Plaintiff's right to

'unfettered access' to Title VII's remedial mechanisms.  To the contrary, the record

demonstrates that Defendant protected Plaintiff's rights by explicitly directing

Cruz to cease entering the Fiscal Accounting Office.

        In any event, Plaintiff has failed to demonstrate a question of fact as to

the materiality of Cruz's interference with Plaintiff's duties.  Cruz's appearance in

---

[2] Indeed, Cruz's decision to enter Plaintiff's work area was actually in
defiance of the agreement Defendant brokered between Plaintiff and Cruz.

[3] This evidence directly contradicts Plaintiff's assertion in her Complaint that
Dang permitted Cruz to reenter Plaintiff's work area.

16

the Fiscal Accounting Office simply did not materially affect the compensation, terms, conditions, or privileges of Plaintiff's employment. <u>Chuang</u>, 225 F.3d at 1126. Cruz did not stop in Plaintiff's work area, speak to Plaintiff or in any way interact with Plaintiff. Cruz merely passed by Plaintiff's cubicle to speak with other employees. When Cruz was present, there were at all times other people around Plaintiff. At most, Plaintiff suffered a "trivial harm" when Cruz passed her. As the Supreme Court has cautioned, however, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Burlington</u>, 548 U.S. at 68. Plaintiff has therefore failed to establish Cruz's entry into her work area interfered with her "'unfettered access' to Title VII's remedial mechanisms." <u>Id.</u>

Accordingly, Plaintiff has failed to demonstrate a prima facie case of retaliation based on Cruz's alleged continued reentries into her work area. Specifically, Plaintiff has failed to demonstrate that: (1) Plaintiff engaged in a "protected activity" when she reported Cruz's alleged inappropriate physical contact and (2) Plaintiff suffered an "adverse action" in retaliation for engaging in a protected activity.

B.     Request to fire Plaintiff and DHRD's investigation into Plaintiff

i.     Adverse Action

Plaintiff next asserts she suffered an adverse action when Dang allegedly requested Plaintiff's supervisors Li, Sikorski, and Leong, fire her.  To the extent Plaintiff contends Dang's statement alone had an adverse affect on Plaintiff's employment, the Court is not persuaded.

Plaintiff here claims that Li told her he was in a meeting with Dang and related that Dang wished to fire her because someone had revealed Plaintiff's "criminal background to him."  (DCSF, Ex. H, at 127–29.)  Plaintiff's criminal background consisted of a theft conviction involving the taking of $1,800 in unemployment benefits.  (Id.)

It is unclear to the Court how Dang's statement alone could qualify as an adverse action taken by the employer.  It was simply a statement made in a meeting to which Plaintiff was not a part.  Further, Dang was a co-employee without the power to fire Plaintiff.  He could make no employment decision with respect to Plaintiff.  There is nothing in the record to suggest that Dang was an agent of Defendant in this context.

More importantly, however, the record bears out that the comment alone lead to <u>no</u> substantial change in Plaintiff's employment status.[4]  Plaintiff has continued to work in her position since 2008 and her duties were never changed. (<u>Id.</u> at 131–34.)  Indeed, Plaintiff remains employed with Defendant to date.  She has never been fired, suspended or demoted.  (<u>Id.</u> at 119–21.)  Morever, Plaintiff's supervisors fully supported Plaintiff.  Indeed, Plaintiff contends that Li responded to Dang's request by stating "over my dead body."  (DCSF, Ex. H, at 131–34.)  Similarly, once the DHRD commenced an investigation into Plaintiff on the basis of her "criminal history" Leong and Sikorski wrote letters to the DHRD on her behalf, praising her work performance and claiming that she was essential to the Fiscal Accounting Office.  (<u>Id.</u>)

In sum, Dang's simple request that Plaintiff be fired cannot alone be considered an adverse action taken by Defendant.

ii.   <u>Pretense</u>

To the extent Plaintiff argues that Dang's statement lead to an investigation into Plaintiff which was retaliatory in nature, the Court finds that

---

[4] The only tangible consequence of Dang's request was an investigation into Plaintiff's alleged felony conviction by the Department of Human Resources Development ("DHRD").  (DCSF, Ex. H, at 123–23, 128–29.) This will be discussed <u>infra</u>.

under the burden shifting scheme established in <u>McDonnell Douglas</u>, Defendant

has offered a "legitimate, non-retaliatory reason for its actions." <u>Nilsson</u>, 503 F.3d

at 954; <u>see also</u> <u>Steggal</u>, 350 F.3d at 1066.  Plaintiff has failed to demonstrate that

the reason Defendant proffered was pretextual.  <u>Nilsson</u>, 503 F.3d at 954 (citing

<u>Porter</u>, 419 F.3d at 894).

        Dang informed Plaintiff's supervisors that she had a criminal history

and requested that they fire her.  Rather than firing her, however, the supervisors

turned the investigation over to the DHRD for investigation.  (PCSF, Ex. H at

123–25; 128–29.)  This is a logical course of action.  Plaintiff was employed in the

Fiscal Accounting Office and had previously been convicted for stealing

unemployment benefits.  (DCSF, Ex. C.)  Her supervisors' decision to refer her

case to the DHRD for investigation was certainly valid in light of her earlier

conviction.  Further, the evidence makes clear that her supervisors' decision to

refer her case to the DHRD was <u>not</u> a pretense.  As discussed, each of her

supervisors voiced their support for Plaintiff.  Plaintiff herself believes that Li,

Sikorski and Leong were always fair to her and she considers them "good

supervisors" and "gentlemen" and feels "lucky" to have their support.  (DCSF, Ex.

H., at 130–31.)  The evidence simply does not support a theory that the

supervisors' decision to direct DHRD to investigate her criminal history was a pretext.

To the extent Plaintiff claims that Dang's decision to report her to the supervisors was a "pretext," the Court remains unpersuaded.  The Ninth Circuit has held that a stray remark not acted upon or communicated to a decision maker is insufficient to establish pretext.  Mondero v. Salt River Project, 400 F.3d 1207, 1214 (9th Cir. 2005).  Here, as discussed, Dang on one occasion requested that Plaintiff's supervisors fire her in light of her criminal history.  This was plainly an isolated remark made by a co-employee without the power to fire her.  Nor did Plaintiff's supervisors act upon Dang's alleged request.  Dang's single comment, under these circumstances, is insufficient to withstand Defendant's Motion for Summary Judgment.  See Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) (identifying cases where a single comment made by a co-employer were insufficient to withstand summary judgment on a retaliation claim).

C.   Hiranaka

Plaintiff's final claim, that Dang hired Hiranaka to harass Plaintiff, is simply belied by the record.  Plaintiff's own evidence establishes that Hiranaka was hired by Gregg a supervisory employee of the Fiscal Accounting Office. (PCSF, Ex. R., at 25.)  Dang did not hire Hiranaka at all, much less for the

21

purposes of retaliating against Plaintiff.  Further, Plaintiff's complaint that Dang

directed Hiranaka to harass Plaintiff by requesting she correct accounting errors

contained in the record of the Highway Division is also without merit.  Sikorski,

Plaintiff's supervisor, authorized Hiranaka to email the Plaintiff and others to

request information to assist her in correcting the errors.  (Id. at 26–27.)  Sikorski

testified clearly that this was his idea and that Dang was not a part of this

undertaking.  (Id. at 27–28.)  Accordingly, Plaintiff has failed to demonstrate a

causal link between the alleged adverse action and protected conduct.[5]  Nilsson,

503 F.3d at 953–54.  Even assuming there was a causal link between Hiranaka's

emails and Plaintiff's protected activities, Defendant has proffered a legitimate

purpose for Hiranaka's emails—i.e. the need to correct errors in the Highway

Division's records.  Plaintiff has offered no evidence to suggest this justification

was merely pretextual.  Nilsson, 503 F.3d at 954 (citing Porter, 419 F.3d at 894).

---

[5] In fact, Sikorski, as discussed, was a supporter of Plaintiffs.  He wrote
letters to the DHRD on Plaintiff's behalf, praising her work performance and
claiming that she was essential to the Fiscal Accounting Office when Dang had
asked him to fire her.  (DCSF, Ex. H, at 131–34.)

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's

Motion for Summary Judgment (Doc. # 27).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 14, 2011.



_____
David Alan Ezra
United States District Judge

Hsu v. State of Hawaii Department of Transportation, et al., Cv. No. 10-00470
DAE-KSC; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

23